UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANTHONY MILLS,

                      Petitioner,

         -vs-                            No. 17-CV-286(MAT)
                                               **DECISION AND ORDER**

CHRISTOPHER MILLER, *Superintendent,*

                      Respondent.

---

## I. Introduction

*Pro se* petitioner Anthony Mills ("Petitioner" or "Mills") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being unconstitutionally detained in respondent Christopher Miller's ("Respondent") custody. Petitioner is incarcerated pursuant to a judgment of conviction entered against him on May 12, 2014 in Erie County Court of New York State ("Erie County Court" or the "trial court"), following a bench trial in which he was convicted of four counts of burglary in the second degree. Petitioner was sentenced to four indeterminate terms of imprisonment of 16 years to life, with two of the terms running consecutive to one another.

In the petition, Petitioner asserts that his continued incarceration is unconstitutional because: (1) the trial court erred in refusing to suppress evidence seized pursuant to a warrantless arrest of Petitioner and a warrantless search of his apartment; and (2) his conviction was against the weight of the evidence, because his accomplice's testimony was not sufficiently

corroborated by independent evidence to support a guilty verdict. For the reasons discussed below, the Court finds that Petitioner has not shown he is entitled to federal habeas relief.

**II. Factual Background and Procedural History**

    **A. The Underlying Crimes and Investigation**

Petitioner's conviction arises out of a series of burglaries committed in the winter of 2011. According to Petitioner's then eighteen-year-old neighbor, Steven McKnight, Plaintiff recruited him to assist in burglarizing various homes. McKnight testified that Petitioner would contact McKnight by yelling through the alley between their houses and that McKnight would then meet Petitioner in the front yard, whereupon Petitioner would drive them to the burglary.

On November 2, 2011, Petitioner rented a vehicle from Enterprise Rent-A-Car. McKnight testified that he and Petitioner used this vehicle to drive to the home of Ronald Fortman on Grand Island, New York. Petitioner and McKnight entered the home through an open garage door and stole a television and jewelry boxes filled with jewelry.

On December 7, 2011, Petitioner rented a U-Haul truck. Defendant and McKnight drove this vehicle to the Grand Island home of Michael Dann. They entered the residence through an unlocked side door and stole a television, a jewelry box, a printer and computer monitor, a telescope, and various wrapped Christmas gifts.

A friend of the Dann family witnessed the U-Haul truck parked in the driveway of the home.

Also on December 7, 2011, and using the same U-Haul truck, Petitioner and McKnight drove to the home of Robert Mariacher in Elma, New York. McKnight used Petitioner's hammer to smash the glass window of the home's front door. Petitioner and McKnight entered the home and stole a guitar, a jewelry box with jewelry, a television, a computer, and a full-size rust-colored couch. Later that night, McKnight's girlfriend's mother witnessed Petitioner bringing the rust-colored couch into his house.

On December 19, 2011, Petitioner rented a vehicle from Hertz, which he and McKnight used to travel to the Grand Island home of Peter Galie. At Petitioner's instruction, McKnight used a hammer to pop open the back kitchen window. McKnight climbed through the window and opened the door for Petitioner. They stole two televisions, a blu-ray player, jewelry, and two cameras. In their haste to exit the home, they spilled a jewelry box and its contents on the stairs and left the door open.

On December 27, 2011, Detectives Brian O'Hara, Timothy Carney, Daniel Granville, and Warren Hawthorn of the Erie County Sheriff's Department arrested McKnight in connection with a different burglary. McKnight was interviewed at length and eventually gave a full written statement that implicated Petitioner as his accomplice in the four burglaries described above. Detective

Carney recovered some of the stolen property identified above from McKnight's residence.

The next day, Detectives O'Hara, Carney, Granville, and Alan Rozansky traveled to Petitioner's home to arrest him. Petitioner was not home, but his fiancee, Michelle Taliaferro, gave the detectives permission to look around the apartment for Petitioner. During the search for Petitioner, Detective O'Hara identified several stolen items, including the rust-colored couch, the telescope, and a television. Taliaferro signed a written consent to search the apartment. The subsequent search turned up numerous other items of stolen property, as well as a bag of burglar's tools containing a hammer and gloves.

Taliaferro told the detectives where Petitioner was and allowed Detective Granville to use her phone to call Petitioner. Deputy William Granville arrested Petitioner and brought him back to his apartment. Petitioner and Taliaferro were then transported to the Erie County Sheriff's Office.

Pursuant to Erie County indictment no. 02792-2011, Petitioner was charged with four counts of burglary in the second degree. The criminal proceedings were conducted by the Erie County Court.

**B. Pre-trial Proceedings**

Prior to trial, Petitioner moved to suppress the physical evidence seized pursuant to his warrantless arrest and the warrantless search of his property, as well as statements he made to the police. The trial court held a series of hearings on these

issues, and ultimately issued a decision granting Petitioner's motion to suppress his statements to the police, except with respect to his telephone conversation with Detective Granville, and denying his request to suppress the physical evidence, except with respect to a jewelry box recovered from the basement upon transporting Taliaferro back to the apartment.

**C.    Petitioner's Trial, Conviction, and Sentencing**

On July 11, 2013, in open court and on the advice of his counsel, Petitioner waived his right to a jury trial. On July 22, 2013, the trial court issued its written decision on Petitioner's suppression motion. Also on July 22, 2013, the trial judge asked Petitioner if he still wished to proceed with a non-jury trial. Petitioner confirmed that he did.

Petitioner's trial commenced on July 22, 2013 and continued through July 26, 2013. At trial, McKnight testified in detail to the events set forth above. McKnight further testified that, during the burglaries, Petitioner always wore boots. Detectives had recovered a pair of Timberland boots from Petitioner's apartment. McKnight further testified that Petitioner had tracked muddy footprints through the Fortman residence, which was confirmed by homeowner Ronald Fortman. Detective O'Hara compared the tread of the Timberland boots recovered from Petitioner's apartment and the bootprints left in the Fortman residence and concluded that they were extremely similar.

McKnight also testified in detail above the vehicles rented by Petitioner to commit the burglaries, including identifying their colors. The police obtained rental contracts naming Petitioner as the renter, with dates coinciding with the burglaries. McKnight further testified that he damaged the windshield of one of vehicles when he attempted to throw the bag of burglars' tools through the window. The rental contract reflected this damage.

McKnight's girlfriend's mother testified that she saw Petitioner unload a couch from a truck into his residence. She further testified that she had observed the different vehicles that Petitioner had rented when he and McKnight would go out together.

At the conclusion of the bench trial, the trial court found Petitioner guilty on all four counts and adjourned the matter for sentencing. The prosecution moved to have Petitioner sentenced as a persistent violent felony offender, and defense counsel acknowledged that he fell within the statutory definition. Petitioner was sentenced to an indeterminate term of 16 years to life on each count, with two of the sentences to run consecutively.

**D.  Direct Appeal**

Petitioner took a counseled direct appeal of his convictions, arguing that (1) his waiver of his right to a jury trial was not knowing and voluntary, (2) the trial court erred in refusing to suppress physical evidence obtained from his warrantless arrest and the warrantless search of his residence because there was no probable cause for his arrest and his fiancee did not consent to

the search, (3) McKnight's testimony was insufficiently corroborated and Petitioner's conviction was therefore not supported by legally sufficient evidence, and (3) his sentence was unduly harsh or severe. The Appellate Division, Fourth Department (the "Appellate Division") entered a decision on March 25, 2016 affirming Petitioner's judgment of conviction. The Appellate Division found that Petitioner had failed to preserve the challenge to the voluntariness of his waiver of his right to a jury trial. With respect to the trial court's partial denial of Petitioner's motion to suppress, the Appellate Division found that the police had probable cause to arrest Petitioner based on McKnight's statements implicating him in the crime. The Appellate Division further found that the police reasonably believed that Petitioner's fiancee had the authority to consent to the search of the apartment and that she had voluntarily consented. The Appellate Division rejected Petitioner's claim that McKnight's testimony was insufficiently corroborated, noting that numerous stolen items were found in Petitioner's home, and concluding that the verdict was not against the weight of the evidence. Finally, the Appellate Division held that Petitioner's sentence was not unduly harsh or severe.

Petitioner sought leave to appeal to the New York Court of Appeals (the "Court of Appeals") with respect to all the claims he raised before the Appellate Division. The Court of Appeals denied his request on June 6, 2016.

-7-

### E. Petitioner for Writ of Error *Coram Nobis*

On July 22, 2016, Petitioner filed a *pro se* petition for a write of error *coram nobis*. Petitioner argued that he was entitled to a new appeal because his appellate counsel had failed to raise a claim of ineffective assistance of trial counsel. Petitioner further claimed that appellate counsel had failed to contest the search of his apartment. The Appellate Division summarily denied this petition on November 10, 2016.

### F. The Instant Petition

Petitioner commenced this action on March 30, 2017. Docket No. 1. Petitioner contends that he is entitled to habeas relief because (1) the trial court erred in partially denying Petitioner's motion to suppress and (2) McKnight's testimony was insufficiently corroborated by independent evidence, resulting in a verdict that was against the weight of the evidence.

## III. Discussion

### A. Standard of Review

"Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1), a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) (internal quotation omitted). "The question is 'not whether the state court was incorrect or erroneous

in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so.'" *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 367 (E.D.N.Y. 2013) (quoting *Ryan v. Miller*, 303 F.3d 231, 245 (2d Cir. 2002)). "The petition may be granted only if 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

### B. The Trial Court's Denial of Petitioner's Motion to Suppress

Petitioner's first argument is that his conviction was unconstitutionally obtained because the trial court failed to suppress physical evidence obtained as a result of his warrantless arrest and the warrantless search of his residence. These claims, which are based on Petitioner's Fourth Amendment right to be free from unreasonable searches and seizures, do not entitle Petitioner to federal habeas relief.

As a threshold matter, Respondent contends, and the Court agrees, that these claims are not cognizable on federal habeas review. "As a general rule, Fourth Amendment claims are not reviewable by the federal courts when raised in a petition brought under § 2254 unless the state prisoner shows that he or she has not had a full and fair opportunity to litigate that claim in the state court." *Graham v. Costello*, 299 F.3d 129, 133–34 (2d Cir. 2002) (citing *Stone v. Powell*, 428 U.S. 465, 481-82 (1976)). Under relevant Second Circuit precedent, "[r]eview of Fourth Amendment

-9-

claims presented by habeas petitioners [can] be undertaken in only one of two instances" - first, "'if the State provided no corrective procedures at all to redress the alleged Fourth Amendment violations'" and second, "'if the State has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Mobley v. Kirkpatrick*, 778 F. Supp. 2d 291, 301 (W.D.N.Y. 2011) (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)).

Here, Petitioner cannot show that either of these circumstances are present. First, Petitioner "does not, and cannot contend that New York failed to provide a corrective procedure to redress his alleged Fourth Amendment claim. This is because he took advantage of the opportunity to challenge the legality of his arrest by means of New York's procedure for litigating Fourth Amendment claims, embodied in New York Criminal Procedure Law § 710.10 et seq., which has been held by federal courts in New York to be facially adequate." *Mobley*, 778 F. Supp. 2d at 301 (internal quotation omitted).

Second, Petitioner cannot show that an unconscionable breakdown in the state's corrective process occurred. Petitioner argues that the Appellate Division's failure to provide a sufficiently detailed explanation for its denial of his petition for a writ of error *coram nobis* constitutes a deprivation of his right to a full and fair determination of his Fourth Amendment

claims. However, the Second Circuit has expressly rejected the argument that an "unconscionable breakdown" occurs when the Appellate Division "issue[s] a summary affirmance rather than a written opinion." *Capellan*, 975 F.2d at 72. As the Second Circuit explained in *Capellan*, it is not the role of the federal courts to "dictat[e] to state courts that they must issue opinions explicitly addressing the issues presented or else face 'second guessing' by the federal courts." *Id*. Moreover, "a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." *Id*. The fact that Petitioner feels the Appellate Division erred in denial of his petition for a writ of error *coram nobis* does not render his Fourth Amendment claims cognizable on federal habeas review.

Moreover, even were the Court to find that these claims were cognizable, Petitioner has failed to establish his entitlement to federal habeas relief. With respect to Petitioner's claim that the police lacked probable cause to arrest him, the Appellate Division's conclusion that McKnight's statements implicating Petitioner in the burglaries provided probable cause was neither contrary to nor an unreasonable application of federal law. "[A] probable cause determination does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment." *Daniels v. D'Aurizo*, 564 F. Supp. 2d 194, 197

(W.D.N.Y. 2008) (internal quotation omitted). Moreover, "[i]t is well-settled that a law enforcement official has probable cause to undertake an arrest where he has received the pertinent information from some individual — typically, the alleged victim or an eyewitness." *Id.* (finding probable cause for arrest where two accomplice-witnesses provided sworn statements implicating arrested individual); *see also Benn v. Kissane*, No. 09-CV-4470 CBA LB, 2011 WL 5513153, at *4 (E.D.N.Y. Nov. 10, 2011), *aff'd*, 510 F. App'x 34 (2d Cir. 2013) ("the statement of an accomplice identifying a named individual as the perpetrator of a crime is legally sufficient to provide probable cause to arrest") (internal quotation omitted); *Chandler v. Napoli*, No. 08-CV-3284 KAM VVP, 2011 WL 4382265, at *6 (E.D.N.Y. July 19, 2011), *report and recommendation adopted*, No. 08-CV-3284 KAM VVP, 2011 WL 4382235 (E.D.N.Y. Sept. 20, 2011) ("an accomplice's uncorroborated testimony must be sufficient to meet the standard for probable cause because it is sufficient to convict a defendant at trial"). Here, McKnight had informed the police that Petitioner was the second participant in the burglaries. McKnight also accurately identified Petitioner from a photo array and provided a signed statement that included details about the burglaries that only a participant could have known. Under these circumstances, the police had probable cause to arrest Petitioner.

Turning to Petitioner's claim that the warrantless search of his apartment was unlawful, his sole argument in this regard is that the police coerced Taliaferro into signing the written consent. While Taliaferro did testify to this effect at the suppression hearing, the trial court chose instead to credit the testimony of the Erie County Sheriff's detectives that they did not threaten or intimidate Taliaferro. Detective Carney expressly testified, and the trial court found credible, that he had advised Taliaferro that she was not required to permit the search, that they could return later with a search warrant, and that she could withdraw her consent at any time. As the Appellate Division explained in denying Petitioner's direct appeal, "the testimony of [Taliaferro] at the suppression hearing that she did not voluntarily consent to the search raised an issue of credibility that the [trial] court was entitled to resolve against defendant." *People v. Mills*, 137 A.D.3d 1690, 1691 (4th Dep't 2016). Moreover, having credited the detectives' testimony, the trial court properly found that the search of the apartment was constitutionally valid. *See United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995) ("So long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search").

For the foregoing reasons, the Court finds that Petitioner's Fourth Amendment claims do not provide a basis for federal habeas relief. Accordingly, these claims are denied.

C.  **Sufficiency of the Evidence**

Petitioner's second and final claim is that the prosecution presented insufficient evidence to corroborate McKnight's testimony, resulting in a verdict that was against the weight of the evidence.  For the reasons discussed below, Petitioner's lack of corroboration claim is unexhausted and not reviewable by this Court.

As an initial matter, the Court finds that Petitioner's lack of corroboration claim is not reviewable by this Court, because he failed to alert the state courts as to the constitutional nature of his claim, and his claim is therefore unexhausted. It is well-established that a state inmate who seeks federal habeas review must first exhaust his available state court remedies.  28 U.S.C. § 2254(b)(1).  This is so because "interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005).  "In order to satisfy the exhaustion requirement, a habeas petitioner must give the state courts a fair opportunity to review the federal claim and correct any alleged error." *Ortiz v. Heath*, 2011 WL 1331509, at *6 (E.D.N.Y. Apr. 6, 2011).

"In order to satisfy the exhaustion requirement, a prisoner must have fairly presented the same legal claim to the state courts that he presents in his federal habeas petition. Because

-14-

non-constitutional claims are not cognizable in federal habeas corpus proceedings, . . . [the petitioner] must put state courts on notice that they are to decide federal constitutional claims." *Petrucelli v. Coombe*, 735 F.2d 684, 687 (2d Cir. 1984). A prisoner may satisfy this requirement in various ways, including: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Grady v. LeFevre*, 846 F.2d 862, 864 (2d Cir. 1988) (internal quotation omitted).

In this case, Petitioner failed to alert the Appellate Division that his sufficiency of the evidence claim was based on the federal constitution. To the contrary, his brief to the Appellate Division cited only New York cases and New York statutes. Moreover, the legal rule that Petitioner's claim relies upon (namely, that the testimony of an accomplice must be corroborated by additional evidence) is a New York rule and not a federal rule. "Indeed, there is no federal constitutional rule requiring the corroboration of accomplice testimony." *Martinez v. Walker*, 380 F. Supp. 2d 179, 183 (W.D.N.Y. 2005) (collecting cases). There is nothing in Petitioner's brief to the Appellate Division to fairly

put that court on notice that this claim was of a constitutional dimension. Accordingly the Court finds that Petitioner has failed to exhaust this claim.

Moreover, even had Petitioner exhausted this claim, it would not be cognizable by this Court, because, as set forth above, there is no federal constitutional rule that requires corroboration of accomplice testimony. To the contrary, under federal law, "[a] conviction may be sustained on the basis of the testimony of a single accomplice, provided that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *Martinez*, 380 F. Supp. 2d at 183–84; *see also United States v. Hamilton*, 334 F.3d 170, 179 (2d Cir. 2003) ("The testimony of a single accomplice is sufficient to sustain a conviction so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt.") (internal quotation marks omitted). As such, "Petitioner's claim that the accomplice testimony was not sufficiently corroborated alleges purely a matter of state law, and is thus not cognizable on federal habeas corpus review." *Mariani v. Kelly*, No. 97-CV-384 FJS/GLS, 2001 WL 1860961, at *4 (N.D.N.Y. Jan. 17, 2001), *report and recommendation adopted*, 2001 WL 35948563 (N.D.N.Y. Sept. 27, 2001). Petitioner cannot establish a right to federal habeas relief based on the alleged lack of corroboration for McKnight's testimony.

## IV. Conclusion

For the foregoing reasons, the petition (Docket No. 1) is denied and dismissed. No certificate of appealability shall issue because Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether th[is] . . . [C]ourt was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith, and therefore the Court denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438, 445-46 (1962). Any application for leave to appeal *in forma pauperis* must be made to the Second Circuit Court of Appeals in accordance with Fed. R. App. P. 24(a)(1), (4), & (5). The Clerk of the Court is instructed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         June 7, 2018